# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

**LEON CASSIMERE, JR.**               *CIVIL NO. 6:15-2352

**VERSUS**                            *MAGISTRATE JUDGE HANNA

**FASTORQ, LLC.**                     *BY CONSENT OF THE PARTIES

## MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment filed by Fastorq, LLC ("Fastorq"). [rec. doc. 37].  Plaintiff, Leon Cassimere, Jr. ("Cassimere"), has filed Opposition [rec. doc. 44[1]], to which Fastorq has filed a Reply [rec. doc. 41].

For the reasons set forth below, the Motion for Summary Judgment is granted in part.

## BACKGROUND

Cassimere, an African American male, brought this race discrimination, harassment and retaliation action asserting federal claims under 42 U.S.C. § 2000e-5, Title VII of the Civil Rights Act of 1964 (as amended).[2]

---

[1]Cassimere initially filed Opposition on January 16, 2017.  However, the pleading was deemed deficient. [rec. doc. 39]. The pleading was re-filed on January 27, 2014 with the required corrections as document 44. Exhibits were separately re-filed as document 45.

[2]Plaintiff additionally cites Louisiana Revised Statute 23:332 of the Louisiana anti-discrimination statutes.  Louisiana courts have applied federal Title VII jurisprudence when interpreting the Louisiana anti-discrimination statutes because Louisiana state law claims are mirror images of federal claims.  *Motton v. Lockheed Martin Corp.*, 900 So.2d 901, 909 (La. App. 4th Cir.), writ denied, 904 So.2d 704 (2005); *Craven v. Universal Life Ins. Co.,* 670 So.2d 1358, 1362 (La. App. 3rd Cir. 1996); *Devillier v.*

1

In his Complaint, Cassimere alleges that during his employment with Fastorq, he was subjected to a discriminatory pay practice in that he received less wages than comparable non-African American employees and was issued disciplinary write-ups following job location complaints, while non-African American employees were not. In his deposition, Cassimere identified Robert Garcia as the comparable white employee who received better pay.   Cassimere additionally alleges that Fastorq retaliated against him for filing a complaint with the EEOC.   Finally, Cassimere alleges that Fastorq fired him on June 9, 2015 stating that his position was being eliminated due to a reduction in work force, when in fact, he was actually replaced by a white employee.   In his deposition, Cassimere identified Mike Jones as the comparable white employee he

---

*Fidelity & Deposit Co. of Md.*, 709 So.2d 277, 280 (La. App. 2nd Cir. 1998)*; Wyerick v. Bayou Steel Corp.,* 887 F.2d 1271, 1274 (5th Cir. 1989); *Glover v. Smith*, 478 Fed. Appx. 236, 244 (5th Cir. 2012) *citing  DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir.  2007).  Such claims are therefore analyzed under the same standards applicable to Title VII claims.  *Glover* and *DeCorte, supra.; Nichols v. Lewis Grocer*, 138 F.3d 563, 566-567 (5th Cir. 1998); *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 818 (5th Cir. 1990). Thus, summary judgment on plaintiff's claim under the Louisiana anti-discrimination statute is granted for the reasons set forth herein with respect to plaintiff's federal Title VII claims.

  Plaintiff likewise cites 42 U.S.C. § 1981.  Like Title VII, 42 U.S.C. § 1981 also prohibits employment discrimination on the basis of race.  *Johnson v. Railway Express Agency*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).  Claims of race-based discrimination brought under § 1981 are governed by the same framework and same standard of proof applicable to claims of employment discrimination brought under Title VII.  *See Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir.1997) *citing LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n. 2 (5th Cir. 1996); *Roberson v. Alltel Info. Services*, 373 F.3d 647, 651 (5th Cir. 2004).  Moreover, "[i]t is the rule of [the Fifth Circuit] that consideration of an alternative remedy brought under § 1981 is necessary only if its violation can be made out on grounds different from those available under Title VII." *Page v. U.S. Indus., Inc.*, 726 F.2d 1038, 1042 n. 2 (5th Cir. 1984).  Because Cassimere has not alleged facts of intentional racial discrimination distinct from those necessary to allege a Title VII cause of action, and because the same framework and standard of proof are applicable, summary judgment on plaintiff's employment discrimination claims under § 1981 is properly granted for the same reasons summary judgment on Cassimere's racial discrimination claims under Title VII are granted.

2

believes replaced him.  Cassimere alleges that he filed a complaint with the EEOC on

May 28, 2015.  On June 24, 2015, the EEOC rendered a no probable cause

determination and issued a right to sue letter.  This lawsuit was filed on September 10,

2015.

Fastorq contends that Cassimere's discriminatory pay practice claim, retaliation

for filing an EEOC charge and discriminatory termination based on race claims, as well

as Cassimere's un-plead claim that he was not assigned jobs based on his race, have not

been administratively exhausted by proper presentation to the EEOC.  Fastorq further

asserts that Cassimere failed to properly plead numerous instances of discrimination in

his Complaint, which are therefore subject to dismissal.  Fastorq contends that

Cassimere's race discrimination claims fail because he has not established a *prima facie*

case of discrimination, or alternatively, that Cassimere's disciplinary write ups and

termination were based solely on legitimate non-discriminatory reasons, namely, his

unsatisfactory work performance and a reduction in work force, respectively.

In opposition, Cassimere argues that he "believes his termination was retaliation

against him for filing the charge of discrimination with the EEOC", that he "believes he

was discriminated against on his job because of his race" and that "[h]e feels that he

was terminated from his job at Fastorq in retaliation for reporting those claims."

Cassimere additionally asserts that he is "simply acting on his right to sue ".  In support

of these arguments, Cassimere submits the same pages from his deposition that were

3

submitted by Fastorq in support of summary judgment and the determination and right

to sue letter issued by the EEOC with respect to EEOC charge 1289.

### *Summary Judgment Standard*

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is

mandated when the movant shows there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law. *Am. Home Assurance Co. v.*

*United Space Alliance, LLC*, 378 F.3d 482, 486 (5th  Cir. 2004); Fed.R.Civ.P. 56(a);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material if proof of its

existence or nonexistence might affect the outcome of the lawsuit under the applicable

law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Minter v.*

*Great American Insurance Co. of New York*, 423 F.3d 460, 465 (5th Cir. 2005).  A

genuine issue of material fact exists if a reasonable jury could render a verdict for the

nonmoving party.  *Thorson v. Epps,* 701 F.3d 444, 445 (5th Cir. 2012).

The party seeking summary judgment has the initial responsibility of informing

the court of the basis for its motion, and identifying those parts of the record that it

believes demonstrate the absence of genuine issue of material fact.  *Washburn v.*

*Harvey*, 504 F.3d 505, 508 (5th Cir. 2007).  If the moving party carries its initial burden,

the burden shifts to the nonmoving party to demonstrate the existence of a genuine

issue of a material fact.  *Id*.  In such a case, the non-movant may not rest upon the

allegations in his pleadings, but rather must go beyond the pleadings and designate

4

specific facts demonstrating that there is a genuine issue for trial. *Celotex v. Catrett*, 477 U.S. at 325.  All facts and justifiable inferences are construed in the light most favorable to the nonmovant.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008).  The motion should be granted if the non-moving party cannot produce sufficient competent evidence to support an essential element of its claim.  *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005). However, metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions and those supported by only a scintilla of evidence are insufficient.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

In an employment discrimination case, the focus is on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff. *Grimes v. Texas Department of Mental Health and Mental Retardation*, 102 F.3d 137, 139 (5th Cir. 1996) (and cases cited therein);  *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 312 (5th Cir. 1999).  As in any case, unsubstantiated assertions

and conclusory allegations are not competent summary judgment evidence. *Grimes*, 102

F.3d at 139; *Lawrence*, 163 F.3d at 312;   *Hervey v. Mississippi Dept. of Educ.*, 404

Fed.Appx. 865, 870 (5th Cir. 2010) *citing  Ramsey v. Henderson*, 286 F.3d 264, 269 (5th

Cir.2002) ("conclusory allegations, speculation, and unsubstantiated assertions are

inadequate to satisfy the nonmovant's burden on a motion for summary judgment"); *See

also  Grizzle v. Travelers Health Network, Inc*., 14 F.3d 261, 268 (5th Cir. 1994) (an

employee's self-serving generalized testimony stating his subjective belief that

discrimination occurred is insufficient to support a jury verdict); *Tamuno v. KFC USA,

Inc.*, 176 F.3d 480 (5th Cir. 1999) *citing Little v. Republic Refining Co., Ltd.*, 924 F.2d

93, 96 (5th Cir.1991) *quoting Elliot v. Group Medical & Surgical Servs*., 714 F.2d 556,

567 (5th Cir.1983) (plaintiff's affidavit and deposition in the absence of other

admissible evidence insufficient to defeat summary judgment).  In response to a motion

for summary judgment, it is therefore incumbent upon the non-moving party to present

evidence - not just conjecture and speculation - that the defendant retaliated and

discriminated against plaintiff on the basis of his race.  *Grimes*, 102 F.3d at 140.

### *Undisputed Facts*

Cassimere was hired by Fastorq on December 2, 2010.  He was promoted to

Supervisor II on September 8, 2014, making $23.00 per hour.  At the time of his June 9,

2015 termination Cassimere was a Supervisor II. The reason given for his termination

was "reduction in force."

Cassimere received three Employee Warning Reports dated April 17, 2014, May 8, 2014 and a combined report for location complaints on December 18, 2014 and January 27, 2015, respectively. Cassimere provided a written response to each.

The April 17, 2014 report states that in response to a question posed by the branch manager as to why Cassimere did not show up to help unload a job, Cassimere yelled at the branch manager and the district manager several times, actions considered insubordinate and unprofessional. The corrective action states that Cassimere was advised that yelling at anyone at work would not be tolerated, and that Cassimere should maintain a professional attitude and tone when addressing anyone at work. Cassimere's written response states that both he and the branch manager apologized for their respective behaviors, and that "an understanding had been reached." Cassimere additionally denied that he was asked to come to work that day.

The May 8, 2014 report states that a customer complained that Cassimere did not know how to perform a "stump test", he had a bad attitude, he did not fill out test charts properly and overcharged on the invoice. As a result, the customer requested that Cassimere not go back to that job location. The corrective action states that Cassimere should provide the highest level of customer service possible when on a customer's location and that a professional attitude should be maintained. He was asked to fill out all test reports completely. Cassimere was also advised that if a rest after completing a

7

job is needed, "please do so", but that rest time should not be charged back to the customer.

Cassimere's response states that "by refusing to comply with this particular company representative and his toolpusher's demands" he did his "job correctly; as trained; and as mandated by federal and state laws . . . ."  Cassimere additionally stated that during his employ with Fastorq no other company representative had said that Cassimere did not know how to do his job and that it was difficult for Cassimere to believe that Fastorq would believe the company representative over him.

The December 18, 2014 incident states that Cassimere was asked to help the rig hands using hammer wrenches, to which Cassimere stated that the customer did not want the men to "swing a hammer" as that was a safety issue.  He additionally stated that "Leon don't swing no hammer" and that this was an "STX problem that our equipment went down not his."  When the customer was asked if he asked the men not use hammer wrenches, the customer said he never told the workers that. The customer additionally stated that due to Cassimere's lie and attitude, Cassimere was not welcome back to the job location.  The corrective action states that Cassimere was taken off the job and informed that this type of conduct would not be tolerated.

Cassimere responded that two co-employees assured him that the Fastorq equipment had been QCed, but on location the unit was not functional.  Accordingly,

Cassimere "approached the BHP company representative to attempt a tactful explanation of our dilemma" suggesting the use of a hammer wrench, to which the company representative "retorted angrily" that he did not "call Fastorq out on my location to use hammer wrenches."  Cassimere apologized to the company representative and assured him Fastorq would rectify the situation as fast as possible. According to Cassimere's response, Fastorq was later replaced by a competitor because BHP refused to continue to tolerate equipment failures, not because of anything Cassimere did. Cassimere additionally noted that the two employees tasked with the responsibility to ensure the equipment is ready are "celebrated with promotions while I receive an employee warning." Finally, Cassimere stated that he worked at the BHP location after this incident on January 18, 2015 and January 19, 2015.

The January 27, 2015 incident states that Cassimere refused to go to a job location for an 8 hour day guarantee, but instead would only go for a 12 hour day guarantee.  He later changed his mind.  The report states that Cassimere or any other employee "cannot dictate company established guarantees."  The corrective action states that Cassimere was taken off the rotation for that job due to his attitude. Cassimere's response was that the branch manager's version of the conversation was different than his and that he would be willing "to take a polygraph test to prove what truly took place."

In February 2015, Cassimere filed a complaint with the Human Resources

Department alleging race discrimination evidenced by a lack of consistency in disciplinary actions.  In support, Cassimere provided the above reports along with his written responses.  Elenor Duckens, the Human Resource Compliance Specialist investigated Cassimere's complaint from its receipt on February 23, 2015 through May 14, 2015.  Her investigation included review of the four employee warning reports submitted by Cassimere, as well as Cassimere's responses, and  the conduct of employee interviews.  In her affidavit submitted in support of this motion, Ms. Duckins attests that her investigation revealed no evidence to substantiate Cassimere's complaints in that both African American and non-African American employees were disciplined by Fastorq for violations of company policies.  Cassimere was emailed these results on May 20, 2015.

On May 22, 2015, Teddy A. Blanchard, Jr., former operations manager for Fastorq received email notice from the Fastorq general manager Todd Delahoussaye that a third round of layoffs would occur at Fastorq.[3]  In his affidavit submitted in support of this motion, Mr. Blanchard attests that objective criteria were used to determine the employees who would be released in this third round of layoffs.

On May 28, 2015, Cassimere completed an intake questionnaire in support of his EEOC charge, assigned  number 461-2015-01289 ("EEOC charge 1289"), alleging race

---

[3]The email states "We are unfortunately looking at options for another round if needed."

10

discrimination and retaliation.  In support of his claim Cassimere cited four Caucasians holding the job title of  "Tech", who Cassimere believed were treated better than him, that is, who did not receive disciplinary action for drinking alcohol in company vehicles, speeding tickets in a company vehicle and 3rd offense DUI.  Based on these instances, Cassimere stated his belief that he was being "targeted for termination based on race."  None of the individuals involved in the vehicle offenses were Supervisor IIs as was Cassimere.  Rather, they were employed as Technician I, Technician IV, Supervisor I and Technician, respectively.  Further, each position encompassed different duties and skills.

The sole allegation contained in EEOC charge 1289 reads as follows:

> On December 18, 2014, and January 27, 2015, I was wrongfully given an employee warning report by Mr. Justin Davis, Assistant Manager.  He claims that I was no longer welcome back by the BHP representative of the job site, which is false, because I supervised that particular job site on January 18, 2015 and January 19, 2015 and worked with BHP representatives, which you can see in my work tickets.  On January 27, 2015, I again was falsely written up for something I did not do by Mr. Davis.
> . . .
> I believe that I have been discriminated against because of my race, Black, and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

[Ex. G].

Although the April and May 2014 Employee Warning Reports were not

mentioned in the charge, in his deposition, Cassimere testified that he provided all of

the Employee Warning Reports to the EEOC.  Fastorq received notice of EEOC charge

1289 on or about June 9, 2015.

On June 24, 2015, the EEOC issued a determination on EEOC charge 1289.

Based on its investigation, the EEOC was unable to conclude that a violation of the

discrimination statutes had occurred.  That same date, Cassimere was issued a right to

sue letter.

On June 27, 2015, Cassimere filed a second charge with the EEOC which was

assigned number 461-2015-01420 ("EEOC charge 1420"). In this charge Cassimere

alleged discriminatory termination based on race and retaliation for filing EEOC charge

1289.  The allegations contained in EEOC charge 1420 are as follows:

> On June 2, 2015, I filed an EEOC charge of discrimination
> because of unfair treatment due to race and retaliation.  On
> June 9, 2015, I was informed by Stephen Kirsch of Human
> Resources that I was discharged because the company was
> experiencing financial difficulties due to a lack of work.
>
> Several days after filing a charge of discrimination, I emailed
> Teddy Blanchard, Operations Manager requesting a copy of
> my personnel file.  On June 4, 2015, I received a response
> from Mr. Blanchard stating that my request was denied.
>
> I believe that I was discriminated against in that I was
> discharged due to my race (black) and in retaliation for filing
> a previous EEOC charge (No. 461-2015-01289) in violation
> of Title VII of the Civil Rights Act of 1964, as amended.

[Ex. I].

To date, the EEOC has not issued a determination on EEOC charge 1420.

In his deposition, although not set forth in his Complaint or in his EEOC charges, Cassimere asserted additional allegations of discrimination.  These allegations include that former Branch Manager Roland Fernandez told Cassimere that Fastorq had a "hit list" of black employees they wanted to get rid of, that when company representatives would request Cassimere for work that Fastorq would send Caucasian employee Robert Garcia to the job location, and that meetings with management were discriminatory in nature.  In responses to discovery, Cassimere did not list Robert Garcia or any company representatives as having knowledge of this case. Although Cassimere identified three company representatives who he claims requested himspecifically, Cassimere was unable to recall any dates, locations, jobs or projects on which these company representatives had requested his services.  Finally, Cassimere identified "questioning about other projects" during management meetings as discriminatory.

Fastorq assigned jobs based on objective criteria to satisfy customer requirements.  The process included a formal rotation program based on the employee's top task level. An employee list was compiled based on the employee's completed craft training and task required for the specific job.  The list could be altered based on customer requests for a particular employee, customer refusals to work with an employee and customer requirements that the employee arrive on a job site within a certain time frame.

## LAW AND ANALYSIS

### *Exhaustion of Administrative Remedies*

A Title VII plaintiff must file a timely charge with the EEOC before he can commence a civil action under Title VII in federal court.  42 U.S.C. § 2000e-5(e)(1), (f)(1)[4]; *Nat'l RR Passenger Corp. v. Morgan,* 536 U.S. 101, 109 (2002);  *Dao v Auchan Hypermarket*, 96 F. 3d 787, 789 (5th Cir. 1996).  Although filing an EEOC charge is not a jurisdictional prerequisite, it "is a precondition to filing suit in district court."   *Dao*, 96 F.3d at 789.  It is equally well settled that  a civil action may not be commenced until after the charging party has received a "right-to-sue" letter from the EEOC. 42 U.S.C. § 2000e–5(f)(1); *Nilsen v. City of Moss Point, Miss*., 621 F.2d 117, 120 (5th Cir. 1980); *see also Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, (1974) (noting the "prerequisites that an individual must satisfy before he is entitled to institute a lawsuit" . . . (1) fil[ing] timely a charge of employment discrimination with the Commission, and (2) receiv[ing] and act[ing] upon the Commission's statutory notice of the right to sue. . .").

The scope of the charging party's subsequent right to institute a civil suit is fixed such that the EEOC charge may be enlarged only by such investigation as reasonably proceeds therefrom.  *National Association of Government Employees v. City Public Service Board of San Antonio, Tx*, 40 F.3d 698, 711-712 (5th Cir. 1994).  Thus, the suit which is subsequently filed may encompass only "the discrimination stated in the charge itself or developed in the course of a reasonable [EEOC] investigation of that charge." *Id*. at 712 *citing* 2 Larson, *Employment Discrimination* § 49.11(c)(1) at 9B–16 ("if an [EEOC] investigation has actually been conducted, most courts hold that the scope of the complaint is limited to the actual scope of the investigation"). Stated differently, the scope of a Title

---

[4]Section 2000e-5(e)(1) provides in pertinent part:  "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . ." § 2000e–5(e)(1).

14

VII action "is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Young v. City of Houston, Tx.*, 906 F.2d 177, 179 (5th Cir. 1990).

Fastorq contends that Cassimere has not exhausted administrative remedies with respect to those claims contained in  EEOC charge 1420 because he has not yet received a right-to-sue letter. Cassimere does not claim that he has received, nor has he  presented this Court with, a right-to-sue letter from the EEOC with respect to EEOC charge 1420.  Accordingly, summary judgment on Cassimere's Title VII claims for retaliation for the filing of an EEOC charge, discriminatory termination based on race and Fastorq's refusal to produce Cassimere's personnel file is properly granted for failure to exhaust administrative remedies.

Fastorq additionally contends that Cassimere's unequal pay claim and unplead claim that he was not assigned various jobs for discriminatory reasons has not been properly exhausted.  Cassimere presents no argument regarding these contentions, nor has be presented this Court with any evidence to dispute that presented by Fastorq.  It is undisputed that Cassimere did not include either of these factual allegations in either of his EEOC charges.  While Cassimere set forth a disparate treatment claim before the EEOC in charge 1289, the sole factual allegation in support of that claim concerned discrimination in the issuance of disciplinary reports.   In the absence of any evidence to the contrary presenting a material fact issue, the Court finds that Cassimere's unequal pay claim and claim that he was not assigned various jobs for discriminatory reasons cannot reasonably be expected to have grown out of Cassimere's administrative charge. These are distinct and wholly unrelated factual allegations from those presented to the EEOC.

This Court's conclusion is bolstered by Cassimere's deposition testimony in which he admitted that he did not include anything in his EEOC charge about the difference in wages between him and

Mr. Garcia.  Although Mr. Garcia is the focus of both of these claims, there is no evidence that Cassimere ever mentioned Mr. Garcia to the EEOC.  To the contrary, Cassimere identified four other Caucasian employees in his intake questionnaire, none of whom were Mr. Garcia. Thus, summary judgment for failure to administratively exhaust these claims is properly granted.

Fastorq additionally contends that Cassimere's unplead allegation regarding the existence of a "hit list" should be dismissed for failure to exhaust administrative remedies.  Given the absence of evidence to the contrary, the Court agrees with Fastorq that this factual allegation was never presented to the EEOC for investigation.  Moreover, it does not appear to this court that this factual allegation could reasonably be expected to have "grow[n] out of the charge of discrimination" filed by Cassimere. *Young,* 906 F.2d at 179.  On the record before this Court it is clear that the EEOC was only investigating whether Fastorq was engaged in a pattern of disparate treatment of black employees in the issuance of disciplinary reprimands. Therefore, summary judgment is proper as to the claims regarding the "hit list" that were never put forth in an EEOC claim or the complaint in this case.

### *The Title VII Claims in Charge 1289*

Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a).  "The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff." *Alvarado v. Texas Rangers,* 492 F.3d 605, 611 (5th Cir. 2007). A plaintiff can prove Title VII discrimination through direct or circumstantial evidence. *Turner v. Baylor Richardson Medical Center,* 476 F.3d 337, 345 (5th Cir. 2007); *Alvarado,* 492 F.3d at 611.  Direct evidence of an employer's discriminatory intent is rare; therefore, Title VII plaintiffs must ordinarily prove their claims through circumstantial evidence. *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (*en banc*).

Where there is no direct evidence of discrimination, Title VII claims are analyzed using the

16

framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Paske v. Fitzgerald*, 785 F.3d 977, 984 (5th Cir. 2015). A Title VII plaintiff bears the initial burden to prove a *prima facie* case of discrimination by a preponderance of the evidence. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999) *citing McDonnell Douglas,* 411 U.S. at 801-803.

To establish a *prima facie* case of disparate treatment racial discrimination, the plaintiff must provide evidence that: "(1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Paske*, 785 F.3d at 985 *quoting Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

The *prima facie* case, once established, raises a presumption of discrimination, which the defendant must rebut by articulating a legitimate, nondiscriminatory reason for its actions. *Shackelford*, 190 F.3d at 404. If the defendant satisfies this burden, the presumption of discrimination raised by the *prima facie* case disappears, and the plaintiff is left with the ultimate burden of proving discrimination. *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002). The plaintiff may satisfy this burden by producing "substantial evidence" which proves that the proffered reasons are pretextual. *Id.; Shackelford*, 190 F.3d at 404. The plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates. *Wallace v. Methodist Hospital System*, 271 F.3d 212, 220 (5th Cir. 2001). "Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient." *Auguster vs. Vermilion Parish School Board,* 249 F.3d 400, 403 (5th Cir 2001)*.* The Fifth

17

Circuit  has "consistently held that an employee's 'subjective belief of discrimination' alone is not sufficient to warrant judicial relief."  *Auguster,* 249 F.3d at 403 *citing Bauer v. Albemarle Corp.,* 169 F.3d 962, 967 (5th Cir. 1999).

Fastorq argues that Cassimere has not presented a *prima facie* case of race discrimination based on the issuance of disciplinary write-ups which non-African American employees allegedly did not receive.  The Court agrees.

To establish a discrimination claim under Title VII, a plaintiff must prove that he was subject to an "adverse employment action"—a judicially-coined term referring to an employment decision that affects the terms and conditions of employment.  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281–82 (5th Cir. 2004);  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006) (the language of Title VII's anti-discrimination provision "explicitly limit[s] the scope of that provision to actions that affect employment or alter the conditions of the workplace")[5].

In the context of Title VII discrimination claims, adverse employment actions consist of "ultimate employment decisions" such as hiring, firing, demoting, promoting, granting leave, and compensating.  *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007); *Alvarado*, 492 F.3d at 605; *Pegram*, 361 F.3d at 282. "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram*, 361 F.3d at 282; *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764 (1998) (a "tangible employment action that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

---

[5]The Supreme Court explained that an adverse employment action in the retaliation context is somewhat broader. *Burlington N.*, 548 U.S. at 68.

18

Title VII does not cover "every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).  Allegations of unpleasant work meetings and verbal reprimands do not constitute actionable adverse employment actions.  *King v. Louisiana*, 294 Fed.Appx. 77, 85 (5th Cir. 2008) *citing Burlington Northern*, 548 U.S. at 68); *see also Liddell v. Northrop Gumman Shipbuilding, Inc.*, 836 F. Supp. 2d 443, 457 (S.D. Miss. 2011) (disciplinary slip placed in personnel file  that did not result in any type of reduced wages, terminations, or layoffs, or any other ultimate employment action are not actionable under Title VII).

In this case, Cassimere has supplied no competent summary judgment evidence which creates a material issue of fact that any disciplinary write ups he received, which non-African Americans employees allegedly did not receive, affected the terms and conditions of employment thereby constituting an ultimate employment action.

In addition, Cassimere has not presented competent summary judgment evidence which creates a material issue of fact that he was treated less favorably than any similarly situated non-African American employee with respect to disciplinary write ups.  The cases of alleged preferential treatment cited by Cassimere in his EEOC charge do not involve nearly identical circumstances or conduct to that engaged in by Cassimere, but rather involved completely different alleged violations of company policy.  *See Paske*, 785 F.3d at 985; *Okoye*, 245 F.3d at 514 ("to establish disparate treatment a plaintiff must show that the employer  gave preferential treatment to another employee under nearly identical circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by ... other employees." ) (internal quotations and alterations omitted). Further, Fastorq has presented uncontroverted evidence that the Caucasian employees cited by Cassimere in his

19

EEOC charge held different job titles, which positions encompassed different job duties and required different job skills, than that of Cassimere.  Employees are not similarly situated if they have different job titles and different job duties.  *Tucker v. SAS Institute, Inc.*, 462 F.Supp.2d 715, 726 (N.D. Tex. 2006) *citing Okoye*, 245 F.3d at 514-15; *Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2000) (noting that holding different jobs is a circumstance which falls short of "nearly identical" standard).

The court acknowledges that Cassimere testified in his deposition that Robert Garcia, who like Cassimere was employed as a Supervisor II, was not written-up for a verbal confrontation with  a company representative for Chevron. However, Cassimere's deposition testimony is based on inadmissible hearsay.  Cassimere has not produced the testimony of Mr. Garcia or the company representative, nor has he presented that of any other Fastorq or Chevron employee confirming that the incident occurred, or if the incident did occur, any evidence that Mr. Garcia was not disciplined.  In sum, this court has before it only Cassimere's unsubstantiated assertion, which under the applicable standard, is not competent evidence to defeat Fastorq's summary judgment motion.

Fastorq also established competent uncontroverted evidence that Cassimere's unequal disciplinary write up claim was throughly investigated by its Human Resource Compliance Specialist, Elenor Ducken, who after a lengthy two and one-half month investigation, which included review of the documentation submitted by Cassimere and employee interviews, found that both African American and non-African American employees were disciplined for company policy violations, and further found no evidence to substantiate Cassimere's claim.  Her testimony is supported by review of the disciplinary write-ups themselves, which contain no reference to race, but document unsatisfactory work performance and customer complaints, and Cassimere's responses , which likewise contain no

reference to race, but document Cassimere's disagreement with the write ups. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 416 (5th Cir. 2007) (noting that neither the plaintiff's evaluation or response thereto "contains any mention of a racial or retaliatory basis for their disagreements" granting summary judgment, finding that "no reasonable jury could infer that racial discrimination or retaliatory intent"); *See also Ulrich v. Exxon Co., USA,* 824 F.Supp. 677, 685 (.D. Tex. 1993) ("a contemporaneous document setting forth an employee's complaints, which, like [plaintiff's] letter, makes no reference to racial discrimination, confirms that race is in fact not an issue.").

Finally, Fastorq has established by competent uncontroverted evidence that job assignments were based on non-discriminatory criteria (training skills and tasks required, customer requests, customer refusals, and customer requirements such as time limitations) pursuant to its rotating job listing system.  As noted above, Cassimere was uanble to identify any jobs he claims were not assigned to him based on his alleged request from a customer representative, and has not listed any company representative as a witness.  The Fifth Circuit has noted that "[w]ithout evidence of disparate treatment, it is difficult to maintain that a straightforward application of workplace policies and procedures was pretextual." *Chaney v. New Orleans Public Facility Management, Inc.*, 179 F.3d 164, 168 (5th Cir. 1999).

Cassimere has failed to produce "substantial evidence" that Fastorq's proffered reasons are pretextual.  As noted above, with the exception of various pages from his own deposition, Cassimere failed to provide any evidence whatsoever  to support a reasonable inference that Fastorq's proffered reasons are false. *Auguster, supra.*  The court is therefore left with Cassimere's subjective belief that he has been the victim of discrimination, which alone is not sufficient to warrant judicial relief.

21

*Auguster, citing Bauer, supra.*

EEOC Charge 1289 also makes a reference to retaliation. Title 42 U.S.C. § 2000e–3(a) prohibits unlawful retaliation.  The *McDonnell Douglas* burden-shifting framework is likewise employed  to analyze Title VII retaliation claims.  *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).  "To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 556-557 (5th Cir. 2007).  "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened [motivating factor] causation test. . . . " *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* ––– U.S. ––––, 133 S.Ct. 2517, 2533 (2013). This heightened standard requires the plaintiff to  establish that "his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Id*.  at 2534.

Once the plaintiff establishes a *prima facie* case, under the *McDonnell Douglas*  framework the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Long*, 88 F.3d at 304-305; *Baker v. American Airlines*, 430 F.3d 750, 754-755 (5th Cir. 2005).  If the defendant introduces evidence which, if true, would permit the conclusion that the adverse employment action was nondiscriminatory, the presumption of retaliation drops from the case and the burden shifts back to the employee to show that the stated reason is actually a pretext for retaliation.  *Long*, 88 F.3d at 305; *Baker*, 430 F.3d at 755.

Fastorq contends that Cassimere has not set forth a *prima facie* case of retaliation for filing a Human Resources complaint about his employee warning reports because he has failed to demonstrate

22

a causal link existed between the protected activity and his termination.[6]

The evidence before this Court establishes that Cassimere filed a complaint of discrimination with the Human Resource department which was received by Elenor Duckens on February 23, 2015. He was terminated on June 9, 2015, slightly less than four months later.  While there was over a four month period between the last employee warning report (January 27, 2015) and the filing of Cassimere's first EEOC charge, charge 1289 (May 28, 2015), the same is not true with respect to the filing of Cassimere's Human Resource department complaint.   Although some Circuits have suggested that a period of at least four months between a protected activity and termination is insufficient to establish a causal link[7], the Fifth Circuit has held that  "temporal proximity alone is insufficient to prove but for causation." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

Cassimere offers nothing except his own conclusory, self-serving testimony that he was "released" because he filed a complaint with the Human Resource department.  Cassimere's sole evidence of retaliation is therefore reduced to an argument that this Court infer retaliation based on the fact that the reduction in force occurred after his discrimination complaint.  However, "the mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a *prima facie* case."  *Roberson v. Alltel Information Services*, 373 F.3d 647, 655 (5th Cir. 2904).

Even if Cassimere has presented a *prima facie* case of retaliation, summary judgment is

---

[6]Fastorq also contends that Cassimere has not set forth a *prima facie* claim for retaliation for the filing of an EEOC charge.  The Court does not address this claim as it is not yet properly exhausted.

[7]*See e.g. Cooper v. City of Olmsted,* 795 F.2d 1265, 1272 (6th Cir. 1986); *Filipovic v. K&R Express Systems, Inc.,* 176 F.3d 390, 399 (7th Cir. 1999).

nevertheless properly granted.[8]  For the same reasons set forth above, Cassimere has failed to meet his burden to show that a genuine issue of material facts exists as to whether Fastorq's proffered legitimate reason for his termination (reduction in force) was a pretext for retaliation and that his complaint to the Human Resource department was the but-for cause of his termination.  *See Willis v. Cleco Corp.*, 749 F.3d 314, 318 (5th Cir. 2014) ("Showing pretext requires a plaintiff to produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination . . . [,] [and] the plaintiff must show that the protected activity was the 'but for' cause of the retaliation."). Cassimere's subjective belief, no matter how sincere, simply cannot support a finding that his protected activity was a but-for cause of his termination. *Smith v. Board of Supervisors of Southern University*, 656 Fed. Appx. 30, 34 (5th Cir. 2016) *citing Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 153 (5th Cir. 1995) and *Waggoner v. City of Garland*, 987 F.2d 1160, 1164 (5th Cir. 1993).

## CONCLUSION

The plaintiff has failed to exhaust his administrative remedies and has sought to put at issue complaints which are not properly before this Court. As such, those claims will be dismissed without prejudice. As to the remaining claims for violations of Title VII based on the claims contained in EEOC Charge 1289, the plaintiff has failed to meet his burden of proof and those claims will be dismissed with prejudice. More specifically, the claims that have not been pled in the complaint, and the claims in EEOC Charge 1420 are to be dismissed without prejudice. The claims set forth in EEOC

---

[8]The Court notes that there is some disagreement among the circuits regarding whether the Supreme Court's holding in *University of Texas Southwestern Medical Center v. Nassar*, ——U.S. ——, 133 S.Ct. 2517, 2528, 186 L.Ed.2d 503 (2013), requires a plaintiff to show but-for causation as part of his *prima facie* case of retaliation, or only at the third step of the *McDonnell Douglas* framework to rebut an employer's legitimate stated reason for the adverse employment action. The Fifth Circuit has not yet resolved this question. *See Smith v. Board of Supervisors of Southern University*, 656 Fed. Appx. 30, fn. 4 (5th Cir. 2016) (and cases cited therein).

Charge 1289 are to be dismissed with prejudice.


Signed this 1ˢᵗ  day of March, 2017, at Lafayette, Louisiana.


_____
**PATRICK J. HANNA**
**UNITED STATES MAGISTRATE JUDGE**

25